UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DAVKEN, INC.,**

        **Plaintiff,**

-vs-                                                    Case No.  6:04-cv-207-Orl-19DAB

**CITY OF DAYTONA BEACH SHORES,**

        **Defendant.**

_____

## ORDER

This case comes before the Court on the following:

1. Motion of Defendant City of Daytona Beach Shores to Dismiss Plaintiff's Second Amended Complaint. (Doc. No. 122, filed May 22, 2006); and

2. Response of Plaintiff Davken, Inc. in Opposition to the City of Daytona Beach Shores' Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. No. 123, filed June 5, 2006).

### Background

The following allegations are drawn from Plaintiff Davken, Inc.'s Second Amended Complaint. (Doc. No. 121, filed May 12, 2006).

On or about November 6, 2002, Davken, Inc. ("Davken") entered into a lease with the owners of a commercial building consisting of approximately 6200 square feet of space and located in Daytona Beach Shores, Florida. (*Id.* at ¶ 7). Under the express terms of Sections Two and Five of the lease, Davken was required to use and possess the premises for the renovation,

remodeling and sale of fireworks.[1] (*Id.*) At the time Davken entered into the lease, federal, state, and local laws permitted the direct sale and immediate delivery of fireworks by businesses. (*Id.* at ¶ 8).

On or about June 25, 2003, the City of Daytona Beach Shores ("City") passed Ordinance 2003-24, an ordinance regulating the sale of fireworks. (*Id.* at ¶ 15). Under the Ordinance, before fireworks could be purchased from Davken, the purchasers were required to obtain and complete an affidavit between the hours of 8:00am-4:30pm, Monday through Friday, at the City's Police Department. (*Id.*) Prior to purchasing the merchandise, the customer was required to provide a copy of the completed affidavit to Davken. (*Id.*)

During the deliberations on Ordinance 2003-24, City Council members revealed their true intent and reason for the adoption of the Ordinance. (*Id.* at ¶ 19). The City Council intended to use the Ordinance as a vehicle to shut down Davken's business and hypothesized that the probable effect of Ordinance 2003-24 would limit the sale of fireworks within the City because customers would have to meet the conditions of the Ordinance prior to purchase and could not physically receive merchandise directly at the point of purchase. (*Id.*) The Ordinance passed unanimously on the evening of June 25, 2003 and was adopted subsequently on the second reading. (*Id.*)

---

[1] Section Two of the lease provides:
"The parties herein agree that, subject to the execution of this lease, Tenant shall be entitled to the use and possession of the Premises for the purpose of renovation and remodeling for a Fireworks Store."
(Doc. No. 121, Ex. A, Section 2).

Section Five of the lease provides that the "[p]remises shall be used for the maintenance and operation of a Fireworks Store." (*Id.* at Section 5).

On or about July 18, 2003, Davken received notice from the City that it was applying Ordinance 2003-24 to Davken's business and that customers purchasing fireworks would be required to complete an affidavit. (*Id.* at ¶ 20). In November 2004, Davken discovered that the City, by an unwritten policy and practice, never established a permitting process and refused to provide a permitting process for the sale of fireworks as required by the Ordinance. (*Id.* at ¶ 21). Despite the City's public statement that the permitting process was available at the Police Department, the provisions of the Ordinance requiring a permitting process were a sham. (*Id.*) Because of the unwritten policy, Davken's customers could not purchase merchandise from Davken and instead traveled blocks north to purchase fireworks from Phantom Fireworks in the City of Daytona Beach. (*Id.* at ¶ 23). As a result, Davken's sales have been eliminated. (*Id.* at ¶ 24).

On May 12, 2006, Plaintiff Davken, Inc. filed a Second Amended Complaint against Defendant City of Daytona Beach Shores containing one count. In that count, Plaintiff alleges a claim under 42 U.S.C. section 1983 for Defendant's violations of Article I, Section 10 (the Contracts Clause) and the Procedural Due Process Clause of the Fourteenth Amendment.

On May 22, 2006, Defendant City of Daytona Beach Shores filed a Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. No. 122). Defendant argues that its interference with the nature of Plaintiff's business does not constitute a material alteration of the lease or a Contracts Clause violation. Defendant further claims that Plaintiff was not deprived of procedural due process because adequate remedial measures are available. On June 5, 2006, Plaintiff filed a response in opposition to Defendant's Motion to Dismiss. (Doc. No. 123).

This Order analyzes Defendant's Motion to Dismiss.

**Standard of Review**

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Furthermore, the Court must limit its consideration to the pleadings and written instruments attached as exhibits thereto. *Fed R. Civ. P.* 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

**Analysis**

*1. The Contracts Clause Claim*

Defendant argues that the Court should dismiss the Contracts Clause claim because any impairment was non-material and caused only minimal alteration of the contractual obligations. Defendant contends that if Plaintiff's own willful violation of Sections Two and Five of the lease would not have resulted in a material breach of the agreement, then it logically follows that Defendant's actions did not cause a substantial impairment. While Sections Two and Five of the lease provide that the premises were to be used as a fireworks business, Defendant claims that the lease did not define these terms as material, nor is there any reference in the lease that the nature of the tenant's business was an important consideration to the landlord.[2]

---

[2] Section Two of the lease provides that "Tenant shall be entitled to the use and possession of the Premises for the purpose of renovation and remodeling for a Fireworks Store." (Doc. No.
(continued...)

Construction of all written agreements is a question of law for the Court. *E.g., Mariner Cay Prop. Owners Ass'n, Inc. v. Topside Marina, Inc.*, 714 So.2d 1130, 1131 (Fla. 4th DCA 1998). When construing a contract, the Court must place itself as closely as possible in the exact situation of the parties to the instrument when executed to determine the intention of the parties, the objects to be accomplished, the obligations created, the time of performance, duration, consideration, mutuality, and other essential features. *American Home Assur Co. v. Larkin General Hosp., Ltd.,* 593 So.2d 195, 197 (Fla. 1992); *Triple E. Dev. Co. v. Floridagold Citrus Corp.*, 51 So.2d 435, 438 (Fla. 1951). The Court must interpret the provisions of the contract in a reasonable manner. *Bay Mgmt. v. Beau Monde, Inc.*, 366 So.2d 788, 791 (Fla. 1st DCA 1978). The interpretation of the contract must be consistent with reason, probability, and the practical aspect of the transaction between the parties. *Id.* However, if the terms of the contract are clear and unambiguous, the Court does not need to resort to the rules of construction. *Harris v. School Bd. of Duval County*, 921 So.2d 725, 733 (Fla. 1st DCA 2006) ("Where the language of a contract is unambiguous, there is no occasion for judicial construction.") (internal citation omitted).

The lease agreement clearly provides that the premises were to be used as a fireworks store. While Section Two states that Plaintiff would be permitted to use the premises as a fireworks store, Section Five unequivocally mandates the use of the store for such a purpose with the operative word "shall." If Plaintiff was unable to use the premises as a fireworks store, the very essence of the contract would be frustrated.

---

[2](...continued)
121, Ex. A, Section 2). Section Five of the lease states that the "Premises shall be used for the maintenance and operation of a Fireworks Store." (Doc. No. 121, Ex. A, Section 5).

Defendant raises various arguments in an attempt to frustrate a logical, straightforward reading of the terms of the lease, stating that because the lease does not explicitly define Sections Two and Five as material, the Court cannot interpret these terms to be material and essential to the contract. Defendant further claims that the severability clause assured that a minor failure to perform an obligation would not result in the termination of all remaining obligations and that the omission of a liquidated damages clause demonstrates the irrelevance of Sections Two and Five to the essence of the lease. Defendant has not cited any case law in support of these arguments, nor has the Court's independent research produced a case supporting such these propositions. Reading the lease in conformance with Defendant's arguments would create an illogical result that ignores the document's plain language and the importance of the use of the premises as a fireworks store.

Next, Defendant argues that the "Force Majeure" clause in Section 33 of the lease agreement demonstrates that any impairment of the lease obligation was not substantial.[3] Contrary to the City's argument, a force majeure clause may only relieve a contracting party of

---

[3] Section Thirty-Three of the lease provides:

If either party fails to perform any of its obligations under this lease as a result of Force Majeure, such party shall not be liable for loss or damage for the failure and the other party shall not be released from any of its obligations under this lease. If either party is delayed or prevented from performing any of its obligations as a result of Force Majeure, the period of delay or prevention shall be added to the time herein provided for the performance of such obligation.

"Force Majeure" shall mean any period of delay which arises from or through Acts of God; strikes, lockouts, or labor difficulty; explosions, sabotage, accidents, riots, or civil commotion; act of war; fire or other casualty; legal requirements; delay caused by the other party; and causes beyond the reasonable control of a party."

(Doc. No. 121, Ex. A, Section 33).

its obligation under a contract and will not insulate a governmental body from a Contracts Clause claim when the governmental body impairs a contract to which it is not a party. *See, e.g., Horowitz-Matthews, Inc. v. City of Chicago*, 78 F.3d 1248, 1251 (7th Cir. 1996).

Finally, Defendant contends that Plaintiff fails to allege that the City's impairment of the lease agreement resulted in an injury to either party. Defendant's argument is contrary to the express allegations of the Second Amended Complaint in which Plaintiff states that its sales were eliminated as a result of Defendant's actions. (Doc. No. 121, ¶ 24).

Because the lease requires the premises to be used as a fireworks store and the failure to use the premises as a fireworks store is one of the essential terms of the contract, Defendant's alleged action of sanctioning an unwritten policy that effectively shutdown Plaintiff's fireworks business goes to the material terms of the contract. *See Beefy Trail, Inc. v. Beefy King Intern., Inc.*, 267 So.2d 853, 857 (Fla.4th DCA 1972) ("To constitute a vital or material breach a defendant's nonperformance must be such as to go to the essence of the contract.").

### *2. The Procedural Due Process Claim*

Regarding Plaintiff's procedural due process claim, Defendant argues that the State of Florida provides several types of remedial relief. For example, Defendant claims that: 1) Plaintiff could have advised the City Council or City Manager that Defendant failed to make the affidavits available; 2) Plaintiff could have filed suit in County Court alleging violation of the municipal ordinance; or 3) Plaintiff could have filed an inverse condemnation claim or fraud claim against Defendant. Defendant contends that the Eleventh Circuit has not imposed an exhaustion or ripeness requirement but permits the district court to dispose of procedural due process claims simply by examining state remedial law.

The adequacy of Florida's post-deprivation remedies is not a relevant consideration in maintaining a procedural due process claim where the claim is based on an act that was forseeable and part of an established state procedure. *See Fetner v. City of Roanoke*, 813 F.2d 1183, 1186 (11th Cir. 1987) (explaining that post-deprivation remedies do not provide due process if pre-deprivation remedies are practicable and that due process requires a pre-deprivation notice and an opportunity to be heard) (internal citations omitted); *see also Gillihan v. Shillinger*, 872 F.2d 935, 939-40 (10th Cir. 1989) (explaining that in cases in which the deprivation is pursuant to an "affirmatively established or *de facto* policy, procedure or custom...the availability of an adequate state post-deprivation remedy is irrelevant and does not bar a § 1983 claim.") (internal citations omitted). In the instant case, Plaintiff has alleged that the deprivation was "forseeable, repeated and continued after discovery, pursuant to this unwritten policy and practice." (Doc. No. 121, ¶ 28(b)). Because the adequacy of post-deprivation remedies is irrelevant when the procedural due process deprivation is carried out pursuant to a policy, procedure, or custom, Defendant's argument that post-deprivation remedies preclude Plaintiff from stating a claim for relief for a procedural due process violation is without merit.

## Conclusion

Based on the foregoing, the Court **DENIES** the Motion of Defendant City of Daytona Beach Shores to Dismiss Plaintiff's Second Amended Complaint. (Doc. No. 122).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on July __25,____ 2006.

*Patricia C. Fawsett*
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record